IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TRINA McNEELY,

               Plaintiff,

vs.                                      Case No. 11-1087-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

               Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

2

any other kind of substantial gainful work which exists in the
national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential
evaluation process to determine disability.  If at any step a
finding of disability or non-disability can be made, the
Commissioner will not review the claim further.  At step one, the
agency will find non-disability unless the claimant can show that
he or she is not working at a "substantial gainful activity."  At
step two, the agency will find non-disability unless the claimant
shows that he or she has a "severe impairment," which is defined
as any "impairment or combination of impairments which
significantly limits [the claimant's] physical or mental ability
to do basic work activities."  At step three, the agency
determines whether the impairment which enabled the claimant to
survive step two is on the list of impairments presumed severe
enough to render one disabled.  If the claimant's impairment does
not meet or equal a listed impairment, the inquiry proceeds to
step four, at which the agency assesses whether the claimant can
do his or her previous work; unless the claimant shows that he or
she cannot perform their previous work, they are determined not
to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.   Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).   At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.   Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).   The Commissioner meets this burden if the decision is supported by substantial evidence.   Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).   This RFC assessment is used to evaluate the claim at both step four and step five.   20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On October 22, 2009, administrative law judge (ALJ) Edmund C. Werre issued his decision (R. at 10-19).   Plaintiff alleges that she has been disabled since December 23, 2006 (R. at 10). Plaintiff is insured for disability insurance benefits through December 31, 2008 (R. at 12).   At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 12).   At step two, the ALJ found that plaintiff had the following severe impairments:

4

chronic vascular headaches, major depressive disorder, post-traumatic stress disorder, bipolar disorder and back and pelvis problems (R. at 12).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 12-13).  After determining plaintiff's RFC (R. at 13), the ALJ determined at step four that plaintiff was unable to perform past relevant work (R. at 17).  At step five, the ALJ determined that other jobs exist in significant numbers in the national economy that plaintiff could perform (R. at 18-19).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 19).

**III.  Did the ALJ err in his consideration of the medical source opinions?**

An ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  This rule was recently described as a "well-known and overarching requirement."  Martinez v. Astrue, 2011 WL 1549517 at *4 (10th Cir. Apr. 26, 2011).  Even on issues reserved to the Commissioner, including plaintiff's RFC and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored.  Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.  The ALJ "will" evaluate every medical opinion that they receive, and will consider a number of factors in deciding the weight to give to any medical opinion.  20 C.F.R. §§ 404.1527(d), 416.927(d).  It is clear

legal error to ignore a medical opinion.  <u>Victory v. Barnhart</u>,

121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005).  Furthermore,

according to SSR 96-8p:

> If the RFC assessment conflicts with an
> opinion from a medical source, the
> adjudicator must explain why the opinion was
> not adopted.

1996 WL 374184 at *7.

On June 20, 2008, Molly Allen, a licensed psychologist,

prepared a mental status examination after interviewing the

plaintiff and reviewing the records provided by Disability

Determination Services (R. at 397-400).  In his decision, the ALJ

cited to this report on three occasions:

> When attending a consultative examination in
> June 2008 it was noted that the claimant was
> not using any type of assistive device.
>
> . . . . . . . . . .
>
> The results of the psychological consultative
> examination in June 2008 showed that the
> claimant was able to adequately perform
> serial additions and subtractions and
> provided a fair response on formal mental
> status exam items.
>
> . . . . . . . . . .
>
> The report of Molly Allen, Psy.D., who
> performed a mental status examination on June
> 18, 2008, casts further doubt on the
> credibility of the claimant's subjective
> complaints.  Dr. Allen noted that the
> claimant tended to "exaggerate" and came
> across as "over-somaticizing."

(R. at 14, 15, 16).  However, the ALJ never mentioned the

conclusions of Molly Allen, who stated the following at the end of her report:

> ABILITY TO SUSTAIN WORK-RELATED SKILLS: **Until [plaintiff] makes more progress in therapy, she would be a poor candidate for maintaining a job because of her very odd style of over-focusing on self and tending to go back to health problems whenever she is stressed by anything.** She is able to understand and carry out simple instructions. **Her attention and concentration are fair.** She can work alongside others but, as noted, tends to over-focus on self. **She has been able to adapt to some of the demands of a work environment, but only generally for short stretches of time before she becomes self-defeating.** She is not really a very persistent individual but can manage her own financial resources.

(R. at 399, emphasis added).

An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. <u>Chapo v. Astrue</u>, ___ F.3d _____, 2012 WL 2384354 at *5 (10th Cir. June 26, 2012); <u>Haga v. Astrue</u>, 482 F.3d 1205, 1208 (10th Cir. 2007); <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083 (10th Cir. 2004); <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1219 (10th Cir. 2004). In the case before the court, the ALJ failed to mention any of Ms. Allen's opinions regarding plaintiff's mental limitations in her ability to work. It is clear error to ignore these medical opinions. Furthermore, there is no medical opinion evidence disputing or contradicting the opinions of Ms. Allen that plaintiff is a poor

candidate for employment because of over-focusing on self and going back to health problems whenever she is stressed, that her attention and concentration are only fair, and that she can adapt to a work environment for only short stretches of time before she becomes self-defeating.  In fact, other evidence in the record clearly supports these opinions by Ms. Allen.

First, the record contains a questionnaire from a supervisor regarding an unsuccessful work attempt from November 27, 2007 through December 28, 2007 as a receptionist in a medical office (R. at 216-218, Doc. 13 at 5, Doc. 17 at 3).  The report noted that plaintiff had a temporary black-out and/or panic attack, she was moved from the front desk, she was not able to concentrate adequately, and she was unable to function under pressure.  The supervisor stated that plaintiff had problems getting along with co-workers, supervisors and the public, and that she seemed agitated and abrupt.  She was therefore moved to a less stressful position without direct patient contact (R. at 217).  Plaintiff was terminated from the job because she did not seem to like the new job assignment and was unfriendly to co-workers.  The supervisor stated that they would not rehire plaintiff because she was not able to perform well under pressure and did not get along well with others (R. at 218).  This information was not discussed by the ALJ despite the fact that it supports some of

the opinions expressed by Ms. Allen in her report.[1]

Second, further support for the findings of Ms. Allen are

contained in a mental RFC assessment prepared by Dr. Schulman.

---

[1]When this case is remanded, the ALJ should consider this statement in accordance with Blea v. Barnhart, 466 F.3d 903 (10th Cir. 2006).  In Blea, the ALJ failed to discuss or consider the lay testimony of the claimant's wife; the ALJ's decision failed to mention any of the particulars of the testimony of claimant's wife, and in fact, never even mentioned the fact that she did testify regarding the nature and severity of her husband's impairments.  The court held as follows:

> In actuality, the ALJ is not required to make specific written findings of credibility only if "the written decision reflects that the ALJ considered the testimony." Adams, 93 F.3d at 715. "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir.1996).
>
> Here, the ALJ made no mention of Mrs. Blea's testimony, nor did he refer to the substance of her testimony anywhere in the written decision. Thus, it is not at all "clear that the ALJ considered [Mrs. Blea's] testimony in making his decision." Adams, 93 F.3d at 715. Additionally, Mrs. Blea's testimony regarding her husband's suicidal thoughts is not only uncontroverted; it serves to corroborate Dr. Padilla's psychiatric examination of Mr. Blea, where he stated that Mr. Blea has been dysthymic for years. [citation to record omitted] Thus, the ALJ's refusal to discuss why he rejected her testimony violates our court's precedent, and requires remand for the ALJ to incorporate Mrs. Blea's testimony into his decision. "Without the benefit of the ALJ's findings supported by the weighing of this relevant evidence, we cannot determine whether his conclusion[s] ... [are] supported by substantial evidence." Threet, 353 F.3d at 1190; see also Baker v. Bowen, 886 F.2d 289, 291 (10th Cir.1989) ("[W]here the record on appeal is unclear as to whether the ALJ applied the appropriate standard by considering all the evidence before him, the proper remedy is reversal and remand.").

Blea, 466 F.3d at 915.

The ALJ relied on Dr. Schulman's report that plaintiff's impairments did not meet or equal a listed impairment (R. at 13). However, the ALJ failed to mention Dr. Schulman's mental RFC assessment, which found that plaintiff had moderate limitations in the following areas:

> The ability to understand, remember and carry out detailed instructions.
>
> The ability to maintain attention and concentration for extended periods.
>
> The ability to interact appropriately with the general public.

(R. at 418-419). Although the ALJ limited plaintiff to simple work, the ALJ did not include the other moderate limitations in his RFC findings. Dr. Schulman's finding that plaintiff has a moderate limitation in the ability to maintain attention and concentration for extended periods supports the opinion of Ms. Allen that plaintiff's attention and concentration are only fair. His finding that plaintiff has a moderate limitation in the ability to interact with the general public is consistent with the report from a former supervisor that plaintiff has problems dealing with the public.[2]

---

[2]As the court has previously indicated, an ALJ must evaluate every medical opinion in the record. Although plaintiff did not specifically object to the failure to consider this report by Dr. Schulman, because the court is reversing and remanding due to the failure to properly consider the uncontradicted medical source opinions of Ms. Allen, and the fact that Dr. Schulman's report and the report of a former supervisor corroborate Ms. Allen's conclusions, the court notes this problem in the hope of forestalling the repetition of avoidable error. Chapo v. Astrue, ___ F.3d ____, 2012 WL 2384354 at *5 (10th Cir., June 26, 2012).

The RFC assessment clearly conflicts with the opinions of
Ms. Allen, who indicated that plaintiff's attention and
concentration are only fair, and that plaintiff is able to adapt
to some of the demands of a work environment, but only for a
short stretch of time before she becomes self-defeating.
However, in violation of SSR 96-8p, the ALJ failed to explain why
these opinions of Ms. Allen were not incorporated into his RFC
findings.  Although the ALJ included in his RFC findings a low
stress limitation, the ALJ, without explanation, did not explain
why the other opinions of Ms. Allen were not included in his RFC
findings.

For these reasons, the court finds that substantial evidence
does not support the decision of the Commissioner that plaintiff
is not disabled.  The court will therefore reverse the decision
of the Commissioner, and remand this case for further hearing
because of the failure by the ALJ to consider the uncontradicted
opinions of Ms. Allen regarding plaintiff's ability to sustain
work-related skills.  In fact, both the mental RFC assessment by
Dr. Schulman, and a report from plaintiff's former supervisor,

---

The ALJ, without explanation, did not include in his RFC findings the opinions of Dr.
Schulman that plaintiff was moderately limited in the ability to maintain concentration and
attention for extended periods, and in the ability to interact appropriately with the general public
(R. at 418-419).  (These limitations find support in the report of Ms. Allen and the report from
plaintiff's former supervisor.)  A moderate limitation is not the same as no impairment at all, and
thus cannot be ignored as a potential element in a claimant's RFC.  An ALJ must explain why he
deviated from medical source opinions indicating moderate mental limitations.  Reveteriano v.
Astrue, 2012 WL 3055799 at *2-3 (10th Cir. July 27, 2012).

provide clear support for the opinions expressed by Ms. Allen regarding plaintiff's ability to sustain work-related skills. However, the ALJ failed to mention either piece of evidence in his decision.  On remand, the ALJ must consider the opinions of Ms. Allen regarding plaintiff's ability to sustain work-related skills, and must also consider the opinions of Dr. Schulman and the report from plaintiff's former supervisor.

Plaintiff has also challenged the weight given by the ALJ to the opinions of Dr. Holmberg and Dr. Mullinix.  Although the court finds no clear error by the ALJ in his analysis of their opinions, their opinions must be reconsidered in light of the opinions of Ms. Allen, Dr. Schulman and the report from plaintiff's former supervisor.  An ALJ must not consider the opinions of these medical sources in isolation, but those opinions must be considered in light of the entire evidentiary record, including the opinions and assessments of other medical sources.  The court is concerned with the necessarily incremental effect of each individual report or opinion by a source on the aggregate assessment of the evidentiary record, and, in particular, on the evaluation of reports and opinions of other medical sources, and the need for the ALJ to take this into consideration.  See Lackey v. Barnhart, 127 Fed. Appx. 455, 458-459 (10th Cir. April 5, 2005).

**IV.  Did the ALJ/Commissioner err at step three?**

Plaintiff has the burden to present evidence establishing that his impairments meet or equal a listed impairment. <u>Fischer-Ross v. Barnhart</u>, 431 F.3d 729, 733 (10th Cir. 2005). In order for the plaintiff to show that his impairments match a listing, plaintiff must meet "**_all_**" of the criteria of the listed impairment. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990)(emphasis in original).

Plaintiff argues that the Commissioner erred by not considering whether plaintiff's narcolepsy or cataplexy could qualify as meeting or equaling a listed impairment. Plaintiff cites to medical records (Exhibit 27F) that were added to the record after the ALJ decision, but which were considered by the Appeals Council (R. at 5). Plaintiff argues that plaintiff's episodes are equivalent to listed impairment 11.03 (Doc. 13 at 11). That listed impairment is as follows:

> 11.03 Epilepsy-nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2011 at 503).

Medical equivalence is defined in 20 C.F.R. §404.1526(a,b) (2011 at 377-378).  Even though plaintiff has the burden of proving that his impairments meet or equal a listed impairment, plaintiff cites to no medical opinion evidence or other evidence that clearly establishes that plaintiff's impairments equal listed impairment 11.03.  Thus, the court does not find that the Appeals Council erred by denying plaintiff's request for review of the ALJ decision after considering this new evidence (R. at 1-5).  However, in light of the fact that the medical evidence contained in Exhibit 27F was not before the ALJ when he issued his prior decision, and because the case is being remanded for other reasons, on remand, the ALJ should consider the medical evidence pertaining to plaintiff's narcolepsy, and determine its impact, if any, on plaintiff's ability to work.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 8th day of August, 2012, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge